People v Serrano (2026 NY Slip Op 50295(U))

[*1]

People v Serrano

2026 NY Slip Op 50295(U)

Decided on March 11, 2026

Criminal Court Of The City Of New York, Bronx County

Bahr, III, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 11, 2026
Criminal Court of the City of New York, Bronx County

People of the State of New York

againstElizabeth Serrano, Defendant.

Docket No. CR-027388-25BX

For the defendant: Giovanni L. Escobedo, Esq. (73 Market Street, Suite 376, Yonkers, NY 10710)For the People: Darcel D. Clark, District Attorney, Bronx County (Juan C. Pucha, of counsel)

Harold E. Bahr, III, J.

Article 245 of the Criminal Procedure Law governs the discovery obligations of the parties. The defendant moved to invalidate the prosecution's certificate of compliance because the prosecution redacted impeachment material of a corrections officer and did not disclose body-worn camera footage, the body-worn camera table of contents and audit trails. The prosecution opposed invalidation, claiming that it appropriately redacted the impeachment material, and that the body-worn camera footage and related items did not exist. Should the court invalidate the certificate of compliance?
The defendant, an incarcerated person on Riker's Island, allegedly slapped the buttocks of a corrections officer on September 23, 2025. The misdemeanor complaint was filed, and the defendant was arraigned on October 6, 2025. At arraignment, the court deemed the complaint to be a misdemeanor information. The court adjourned the case for the prosecution's discovery compliance. The People filed and served their certificate of compliance (COC) and statement of readiness on November 10, 2025. The court adjourned the case for the defendant to file a motion to invalidate the COC. On November 14, 2025, the People filed a supplemental COC (sCOC) and SOR. After receiving additional discovery, the People filed a second supplemental COC (sCOC2) on December 17, 2025. On the case's return date of January 7, 2026, the court relieved the defendant's assigned counsel of the assignment and assigned current defense counsel to represent the defendant. The court set an omnibus motion schedule allowing for defense motions, the People's opposition and cross-motions, and the defendant's reply. On January 20, 2026, defense counsel asked for a good cause extension under CPL 245.70 (2), which the court granted in a written decision the next day. On February 26, without the court's permission, the People filed and served a surreply.[FN1]
AUTOMATIC DISCOVERYUnder CPL 245.20 (1), the People must automatically disclose to the defense 21 types of items and information that "are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." Some discovery categories must "relate to the subject matter of the charges" while others require the narrower standard: "are relevant to any offense charged."In fulfilling their discovery obligations, the People must exercise due diligence and make reasonable inquiries to ascertain the existence of discoverable material and information.[FN2]
When material is not in the People's possession, custody, or control, the People must "make a diligent, good faith effort to ascertain the existence of material or information . . . and cause such material or information to be made available for discovery."[FN3]

Once the People satisfy their automatic discovery obligations, the People must file and serve a certificate of compliance (COC) certifying their fulfillment of CPL 245.20 (1).[FN4]
Any statement of readiness (SOR) must be accompanied by or preceded by a valid COC.[FN5]
"No adverse consequence to the prosecution or the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances."[FN6]

If the prosecution provides additional discovery after filing the initial COC, it must file a supplemental COC,[FN7]
detailing the basis for the delayed disclosure so that the court can assess the initial COC's validity.[FN8]
The original COC will not be impacted so long as the COC was filed in good faith and after exercising due diligence or the delayed discovery did not exist when the COC was filed.[FN9]

When assessing the People's due diligence, the court "shall look at the totality of the party's efforts to comply with [Article 245], rather than assess the party's efforts item by item."[FN10]
The court must consider the listed statutory factors [FN11]
and may consider others. Finally, the [*2]People bear the burden of proving that they exercised due diligence prior to filing their certificate of compliance.[FN12]
Vague assertions regarding their efforts are insufficient to meet their burden.[FN13]
In their affirmation, the People must provide details regarding initial and follow-up efforts made.
Here, the defendant alleged that the People's November 13, 2025, COC was invalid because the People did not turn over a corrections officer's Giglio [FN14]
material before certification; when they turned the Giglio material over, it was improperly redacted; the People never disclosed body-worn camera (BWC), the index of BWC, and the audit trails of the BWC; and that, after filing the COC, the People turned over an audio recording from an infraction hearing and additional reports from the Department of Corrections. The People countered that they did disclose Giglio material before filing their COC; the Giglio material was properly redacted; no BWC exists, and that, pursuant to a subpoena, the New York City Department of Corrections (NYCDOC) did not turn over the belatedly disclosed reports and audio recording until after the People filed their COC.
The People's initial discovery obligation, under CPL 245.20 (1), extends only to discovery in the People's actual or constructive possession.[FN15]
 CPL 245.20 (2) deems "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency" to be in the People's constructive possession. Only failures to turn over initial discovery can invalidate a COC. In Walker, the court explained that for an item to be initial discovery, it must satisfy two prongs: relevancy and possessory. Material that is either related to the subject matter or relevant to the charges satisfies the relevancy prong. To satisfy the possessory prong, the prosecution or state or local law enforcement must have the item. Items and information that individuals or groups other than state or local police or law enforcement possess cannot invalidate a COC. Instead, such discovery lapses may be remedied only under CPL 245.80.
The defendant here seeks discovery that does not satisfy the possessory prong. The [*3]NYCDOC is an administrative and not a local law enforcement agency.[FN16]
None of the belatedly disclosed or undisclosed items are deemed to be in the People's possession. Thus, the alleged discovery lapses cannot invalidate the COC.
As for the BWC and related materials, the court credits the People's unopposed claim that those materials do not exist. To be sure, the prosecution cannot disclose things that do not exist. Even if the BWC existed, because NYCDOC is not a law enforcement agency for CPL 245.20 (2) purposes, the items were not in the People's constructive possession. Thus, the BWC could not have been a basis to invalidate the COC.
As for the disputed Giglio material, the court notes that the People's COC stated as item "w" that they disclosed the Giglio material for three corrections officers. In his omnibus motion, the defendant did not refute the fact that the material was listed as disclosed. In his reply, the defendant shared a screenshot of the discovery folders. The "Giglio" folder shows that the assigned ADA last modified that folder on November 7, which was six days before the People certified their discovery compliance. Thus, the credible evidence shows that the People disclosed the disputed Giglio material before filing and serving their COC. As to the redactions of the Giglio material, the court accepts the People's representation that they redacted only personal home addresses, personal telephone numbers, dates of birth, Social Security numbers, and names of officers not involved in this matter.[FN17]
Thus, the Giglio material is not a basis to invalidate the COC.
Because the defendant sought only COC invalidation and not sanctions, the court denies the defendant's motion to invalidate the COC and does not impose sanctions on the People.

SUPPRESSION MOTIONS
The defendant moved to suppress statements that the People provided notice of under CPL 710.30 (1) (a) or, alternatively, a Huntley hearing.[FN18]
The People opposed suppression and a hearing, arguing the statements for which they provided notice were res gestae, or made during the crime. The People, however, in their statement notice expressly admitted "that statements in the form . . . below were made by the defendant, other than in the course of the criminal transaction." Based on the People's representation in the statement notice, the court finds no merit in the People's argument. Thus, the court will grant a hearing to determine whether defendant's alleged statements were involuntary in the traditional and modern [FN19]
senses or, alternatively, a Huntley hearing.
The defendant sought to suppress the identification procedure of which the People served [*4]timely notice under CPL 710.30 (1) (b) or, alternatively, a Wade hearing.[FN20]
The People opposed suppression and a hearing, arguing that the corrections officer who identified the defendant in a photo array knew the defendant "since 2023 through her employment at Rikers Island."[FN21]
The People, however, did not address the parties alleged familiarity in their affirmation, where sworn allegations of fact belong. Instead, the prosecution stuck the factual allegation in its legal memorandum, making it an unsworn fact. The People compounded their mistake by not revealing the source of that allegation. To be sure, the assigned Assistant District Attorney lacks first-hand knowledge of the parties' alleged interactions. Because the People's factual allegation is unsworn and unsourced, the court gives the allegation no evidentiary weight. Thus, the court orders a hearing to determine whether the properly noticed photo array was unduly suggestive or, alternatively, a Wade hearing.
The defendant also sought to suppress the defendant's alleged statement and the photo array as fruits of an unlawful arrest or, alternatively, a Dunaway hearing.[FN22]
The defendant, however, proffered no facts challenging the propriety of the warrantless arrest. Accordingly, the court denies a hearing to determine whether the defendant's arrest was supported by probable cause or a so-called Dunaway hearing.

IN-LIMINE MOTION
Lastly, the defendant sought to "suppress" the defendant's criminal record and prior bad acts. The People opposed. The court denies the in limine motion to exclude the defendant's prior bad acts and criminal convictions at trial without prejudice because the evidentiary motion is unripe. The court grants the defendant leave to renew the motion before a trial judge.

CONCLUSION
Based on the court's reasoning, it is
ORDERED that the defendant's motion to invalidate the COC is DENIED; the COC continues to be valid; it is further
ORDERED that the defendant's motions to suppress the defendant's statements and an identification procedure are held in abeyance, pending a so-called Huntley/Wade hearing that the court GRANTS; it is further
ORDERED that the defendant's motion to suppress the fruits of an unlawful arrest or, alternatively, a Dunaway hearing is DENIED; it is further
ORDERED that the motion in-limine is DENIED without prejudice with leave to renew before the trial judge; it is further
ORDERED that any relief not granted is denied.
This constitutes the court's order and decision.
DATED: March 11, 2026BRONX, NEW YORKHon. Harold E. Bahr, III, J.C.C.

Footnotes

Footnote 1:To render this decision, the court considered the defendant's omnibus motion, the People's opposition, the defendant's reply, and information in the court's file. The court did not consider the People's surreply because the People never sought the court's permission to file it (BAC Home Loans Servicing, LP v Uvino, 155 AD3d 1155 [3d Dept 2017]).

Footnote 2:CPL 245.50 (1); see People v Bay, 41 NY3d 200 (2023).

Footnote 3:CPL 240.20 (2).

Footnote 4:CPL 245.50 (1).

Footnote 5:CPL 30.30 (5).

Footnote 6:CPL 245.50 (1).

Footnote 7:Id.

Footnote 8:CPL 245.50 (1-a).

Footnote 9:Id.

Footnote 10:CPL 245.50 (5).

Footnote 11:The factors are: "the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50 [5] [a]).

Footnote 12:People v Hespinobarros, 245 AD3d 826 (2d Dept 2026).

Footnote 13:People v Zeigler, 2026 NY Slip Op 50232(U) (App Term, First Dept February 26, 2026).

Footnote 14:United States v Giglio, 405 US 150 (1972).

Footnote 15:People v Branton, 238 AD3d 1429 (3d Dept 2025); People v Radford, 237 AD3d 1511 (4th Dept 2025); People v Walker, 232 AD3d 1214 (4th Dept 2024); see also People v Dunn, 2026 NY Slip Op 50281(U) (Crim Ct, Bronx Co 2026).

Footnote 16:People v Howard, 87 NY2d 940 (1996) (concluding that the State's Correction Department is not a law enforcement agency; thus, the Rosario material was not in the People's control).

Footnote 17:CPL 245.20 (6) expressly permits such redactions without the need to move for a protective order.

Footnote 18:People v Huntley, 15 NY2d 72 (1965).

Footnote 19:Modern involuntariness means statements made during custodial interrogation that were taken in violation of rights enunciated in Miranda v Arizona, 384 US 436 (1966).

Footnote 20:United States v Wade, 388 US 218 (1967).

Footnote 21:People's opposition, at 8.

Footnote 22:Dunaway v New York, 442 US 200 (1979).